UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

GONZALO CORTES,

                        Plaintiff,

      -against-

CITY OF NEW YORK, et al.,

                        Defendants.
----------------------------------------------------------x

**PLAINTIFF'S COUNTERSTATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

14 CV 3014 (SLT) (RML)

       Plaintiff hereby responds to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts as follows:

1. Plaintiff was arrested on July 1, 2013 at approximately 3:40 a.m.

    **Undisputed**.

2. Plaintiff was charged with Assault with Intent to Cause Physical Injury and Harassment in the Second Degree.

    **Undisputed**. However, plaintiff respectfully submits that this is not a material fact.

3. Plaintiff was arrested on the statement of a complainant who claimed that plaintiff was intoxicated, became angry and hit the complainant with an open hand.

    **Disputed**. Plaintiff never touched the complainant. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶¶ 18-21.

4. Plaintiff was transported to the 115th Precinct where he arrived at approximately 4:00 a.m.

    **Disputed**. Mr. Cortes arrived at the precinct by 3:45 a.m., sober and uninjured. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶¶ 18-21.

5. Plaintiff was then placed in a holding cell at the precinct.

    **Disputed**. Mr. Cortes's personal property was confiscated and he was put into a cell, already crowded with eight or nine other men, that had no toilet. At

approximately 4:45 a.m., after being in a crowded cell with nine strangers for approximately an hour without a bathroom, Mr. Cortes asked to use the restroom. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶¶ 23-24.

6. After approximately two hours, plaintiff asked officers to take him to the bathroom.

   **Disputed**. This is a misstatement of the record. Mr. Cortes had been in the cell approximately an hour before he was taken to the restroom and assault. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶ 24 and Plaintiff's Memorandum of Law at pp. 10-11.

7. An officer brought plaintiff towards the cells where the bathrooms were located.

   **Disputed.** Defendant Musa handcuffed Mr. Cortes and led him to a darkened hallway of vacant cells in direct view of supervising Desk Sergeant Stephen Daly. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶ 25.

8. Plaintiff hesitated before stepping into the darkened room where he was being led.

   **Disputed.** Mr. Cortes grew scared and turned around -- in addition to defendant Musa, defendants Cappuccia, Smith, Schulz and Ryan were directly behind him. Defendant Musa had his hands on Mr. Cortes. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶ 26.

9. The officer leading plaintiff, without provocation, shoved plaintiff into a wall, injuring plaintiff's shoulder.

   **Disputed.** Mr. Cortes was scared and told the officers that he no longer needed to use the restroom. At that point the officers violently yanked Mr. Cortes upward and into cell bars by his rear-cuffed arms, tearing his right rotator cuff completely. All five officers were involved. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶¶ 26-27; *see also* Plaintiff's Memorandum of Law at Point I.

10. When this occurred, plaintiff glanced behind him and saw four additional officers behind him.

    **Disputed.** Plaintiff observed the four additional officers – Cappuccia, Ryan, Smith and Schulz – before he was pushed. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶¶ 26-27; *see also* Plaintiff's Memorandum of Law at Point I.

11. Plaintiff was only aware of a strong force pushing him up against the cell wall.

   **Disputed**. Plaintiff testified repeatedly that he was assaulted by five officers. *See id.*

12. Plaintiff was unable to identify more than a single pair of hands pushing him.

   **Disputed**. Plaintiff has identified five officers (by name and physical description) as having participating in the use of force against him: defendants Musa, Cappuccia, Ryan, Smith and Schulz.

13. The single shove lasted no more than five to ten seconds.

   **Disputed**. Plaintiff did not testify to the duration of the shove. Cortes Dep., Harvis Decl., Ex. 2, p. 123, ln. 13-18 (Q: Was [the shove] for a second, was it for ten seconds, was it thirty seconds? A: All I remember is they lifted me, they pushed me against the cell and that's when he whispered in my ear I though you wanted to go to the restroom so it is hard for me to calculate how long I spent against the cell.); *see also* Plaintiff's Memorandum of Law at Point I.

14. Following the incident, plaintiff was then put back in a cell.

   **Disputed**. Instead of rendering Mr. Cortes aid for the severe injury they had caused, Musa and the other officers kept Mr. Cortes confined to the cell in handcuffs for approximately three hours (from 4:45 a.m. to 7:37 a.m.), enduring excruciating pain as the handcuffs cut the skin of his wrists. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶ 32.

15. Plaintiff remained in the cell until an ambulance was called for him at approximately 7:30 a.m.

   **Disputed**. Plaintiff remained in the cell until EMS arrived and ordered him unhandcuffed at approximately 7:37 a.m. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶ 34.

16. Sgt. Rodeschin took the desk at the precinct at approximately 7:05 a.m.

   **Disputed**. Defendant Rodeschin arrived at the precinct at 6:30 a.m., approximately an hour before an ambulance was called for Mr. Cortes. *See* Additional Material Facts Alleged to be in Dispute, *infra*, at ¶ 34.

17. Plaintiff was diagnosed with a shoulder injury.

   **Undisputed.**

## Additional Material Facts Alleged to be in Dispute

18. In the early morning hours of July 1, 2013, Mr. Cortes was involved in a verbal dispute with a bartender at Friends Tavern, a gay bar on Roosevelt Avenue in Queens. Cortes Dep., Harvis Decl., Ex. 2, p. 37, ln. 24-25; p. 69, ln. 1-25.

19. The dispute arose after Mr. Cortes purchased a half-bottle of Aguardiente, a Columbian liquor, and, upon returning from the bathroom, saw evidence that the bartender had poured his drink for other patrons. Cortes Dep., Harvis Decl., Ex. 2, p. 54, ln. 20-p. 56, ln. 12.

20. At no time did Mr. Cortes touch the bartender or engage in any violent behavior at the bar. Cortes Dep., Harvis Decl., Ex. 2, p. 74, ln. 8-13.

21. Mr. Cortes called 911 to report the incident, as did the bartender, but the responding NYPD officers failed to conduct a reasonable investigation and arrested Mr. Cortes on the false allegations of the bartender, although the bartender refused medical attention. Cortes Dep., Harvis Decl., Ex. 2 at p. 73, ln. 23-p. 77, ln. 11; Smith Dep., Harvis Decl., Ex. 11 at p. 69, ln. 12-p. 70, ln. 3.

22. Mr. Cortes arrived at the precinct by 3:45 a.m., sober and uninjured. *See* Command Log, Harvis Decl., Ex. 12 (physical condition: normal); Arrest Report, Harvis Decl., Ex. 13 (same); Smith Dep., Harvis Decl., Ex. 11, p. 82, ln. 10-14 (arresting officer) (Q:…Would [someone being visibly intoxicated] be documented anywhere? A: In the arrest report I believe.); Medical Treatment of Prisoner of Prisoner Form I, Harvis Decl., Ex. 14 ("Prisoner Refused Medical Treatment in the Field: No"); Medical Treatment of Prisoner of Prisoner Form II, Harvis Decl., Ex. 15 (same).

23. Mr. Cortes's personal property was confiscated and he was put into a cell, already crowded with eight or nine other men, that had no toilet. Cortes Dep., Harvis Decl., Ex. 2, p. 84, ln. 5-8; p. 86, ln. 23-25; p. 87, ln. 1-6.

24. At approximately 4:45 a.m., after being in a crowded cell with nine strangers for approximately an hour without a bathroom, Mr. Cortes asked to use the restroom. Cortes Dep., Harvis Decl., Ex. 2, p. 110, ln. 10-13; p. 114, ln. 4-7.

25. Defendant Musa handcuffed Mr. Cortes and led him to a darkened hallway of vacant cells in direct view of supervising Desk Sergeant Stephen Daly. Daly Dep., Harvis Decl., Ex. 1, p. 83, ln. 7-22; Cortes Dep., Harvis Decl., Ex. 2, p. 112, ln. 5-14; p. 114, ln. 13-p. 115, ln. 16; p. 117, ln. 18-24; p. 119, ln. 17-23; Letter from G. Harvis to E. Jacobs dated September 29, 2016, Harvis Decl., Ex. 16 ("9/29/16 Ltr.") at p. 3 ("The defendant who brought Mr. Cortes to the bathroom was Christopher Musa.").

26. Mr. Cortes grew scared and turned around -- in addition to defendant Musa, defendants Cappuccia, Smith, Schulz and Ryan were directly behind him. Defendant Musa had his hands on Mr. Cortes. Cortes Dep., Harvis Decl., Ex. 2, p. 114, ln. 17-19; p. 118, ln. 12-13; p. 119, ln. 11-p. 120, ln. 3; p. 115, ln. 6-11 ("When I refused to go inside the bathroom, I looked back and there were five officers."); 9/29/16 Ltr., Harvis Decl., Ex. 16 (identifying Musa, Cappuccia, Ryan, Smith and Schulz as the the other four assailants).

27. Mr. Cortes was scared and told the officers that he no longer needed to use the restroom. Cortes Dep. Harvis Decl., Ex. 2, p. 114, ln. 20-p. 115, ln. 5.

28. At that point the officers violently yanked Mr. Cortes upward and into cell bars by his rear-cuffed arms, tearing his right rotator cuff completely. Cortes Dep., Harvis Decl., Ex. 2, p. 114, ln. 23-p. 115, ln. 11 ("…That's the moment *they* grabbed me and *they* pushed me against the cell and that's when *they* hurt my shoulder…"); p. 120, ln. 4-6 (Q: How far were the other four officers? A: They were all together.); Expert Report of Drew A. Stein, M.D., Harvis Decl., Ex. 9 (finding a causal connection between the incident and plaintiff's injury).

29. After the assault, and with Mr. Cortes still pressed against the cell bars, defendant Musa whispered in plaintiff's ear "oh, I thought you wanted to go to the bathroom." Cortes Dep., Harvis Decl., Ex. 2, p. 115, ln. 1-5; p. 115, ln. 23-p. 116, ln.3; p. 116, ln. 12-16; p. 118, ln. 20-25; p. 122, ln. 13-22.

30. The assault took place in the direct line-of-sight of desk sergeant Stephen Daly, who was on duty at the time and only an hour earlier had recorded Mr. Cortes as uninjured in the precinct's command log. Daly Dep., Harvis Decl., Ex. 1, p. 134, ln. 18-p. 135, ln. 3, p. 135, ln. 18-p. 136, ln. 2; p. 136, ln. 16-p. 137, ln. 10; Daly Dep., Harvis Decl., Ex. 1, p. 83, ln. 7-22.

31. Mr. Cortes was in visible agony and still handcuffed when defendant Musa returned him to the crowded cell. Cortes Dep., Harvis Decl., Ex. 2, p. 124, ln. 24-p. 125, ln. 3; p. 125, ln. 14-15; p. 127, ln. 10-15; 9/29/16 Ltr., Harvis Decl., Ex. 16 at p. 3.

32. Instead of rendering Mr. Cortes aid for the severe injury they had caused, Musa and the other officers kept Mr. Cortes confined to the cell in handcuffs for approximately three hours (from 4:45 a.m. to 7:37 a.m.), enduring excruciating pain as the handcuffs cut the skin of his wrists. Memo Book of Arresting Officer Matthew Smith, Harvis Decl., Ex. 17 at Def208 (reflecting plaintiff's arrival at precinct at 3:45 a.m.); Command Log, Harvis Decl., Ex. 12 (same); Cortes Dep., Harvis Decl., Ex. 2, p. 114, ln. 4-12; p. 126, ln. 23-p. 127, ln. 6; FDNY Pre-Hospital Care Report, Harvis Decl., Ex. 5 ("Onset Date/Time [of injury]: 04:00:00;" "Patient Contact [with EMS]: 7:37:02").

33. Mr. Cortes repeatedly asked for medical treatment beginning immediately after the assault, but the defendants refused to even acknowledge him. When an officer did finally speak to Mr. Cortes, it was to convey the threat that plaintiff would be "the last person to leave" the precinct if he insisted on receiving medical treatment. *Id*. Plaintiff responded "I told him I didn't care, that I was in pain." Cortes Dep., Harvis Decl., Ex. 2, p. 125, ln. 25-p. 126, ln. 5 ("…I told him I didn't want them to hit me again."); 127, ln. 10-p. 128, ln. 17.

34. When medical technicians finally reached plaintiff inside the precinct at approximately 7:37 a.m., they requested that plaintiff's handcuffs be removed, noted the onset time of the injury as 4:00 a.m. and also noted a suspected dislocation and deformity of Mr. Cortes's right shoulder. FDNY Prehospital Care Report Summary, Harvis Decl., Ex. 5 at Def198-99; Cortes Dep., Harvis Decl., Ex. 2, p. 128, ln. 23-p. 129, ln. 5; Rodeschin Dep., Harvis Decl., Ex. 4, p. 286, ln. 7-9; Sprint Report, Harvis Decl., Ex. 6 at Def196 .

35. Despite NYPD regulations requiring in-custody injuries to be documented and promptly reported up the chain of command and to the internal affairs bureau, Mr. Cortes's injury was never documented or reported. Daly Dep., Harvis Decl., Ex. 1, p. 180, ln 18-25; p. 189, ln. 7-23; Guzman Dep., Harvis Decl., Ex. 3, p. 92, ln. 7-16; p. 93, ln. 24-p. 94, ln. 9; NYPD Patrol Guide § 207-21, Harvis Decl., Ex. 18; NYPD Patrol Guide § 208-03, Harvis Decl., Ex. 19 at ¶ 23(g)(1) (requiring preparation of medical treatment of prisoner form in all cases).

36. At 6:00 a.m., officers prepared two different medical treatment of prisoner forms, one indicating a "pre-existing" injury and one indicating a "new" injury. Medical Treatment of Prisoner of Prisoner Form I, Harvis Decl., Ex. 14; Medical Treatment of Prisoner of Prisoner Form II, Harvis Decl., Ex. 15.

37. Both forms reflect defendant desk sergeant Stephen Daly having signed them at 6:00 a.m., although an ambulance was not even requested for Mr. Cortes until at least 7:26 a.m. and Daly would later deny the authenticity of his signature on the forms. Daly Dep., Harvis Decl., Ex. 1, p. 157, ln. 24-p. 158, ln. 14; p. 173, ln. 18-p. 175, ln. 7; p. 186, ln. 25-p. 187, ln. 4.

38. At 6:30 a.m., defendant Peter Rodeschin arrived at the precinct to begin his shift as desk sergeant. Rodeschin Dep., Harvis Decl., Ex. 4, p. 243, ln. 21-24.

39. Sergeant Rodeschin admits that he altered the prior command log entry concerning Mr. Cortes's physical condition as originally written by Sergeant Daly. Rodeschin Dep., Harvis Decl., Ex. 4, p. 177, ln. 10-18; p. 179, ln 14-22; Command Log, Harvis Decl., Ex. 12 (reflecting alteration).

40. EMS workers recorded Mr. Cortes as saying inside the precinct "PD took him down when he went to the bathroom." FDNY Pre-Hospital Care Report, Harvis Decl., Ex. 5 at Def199.

41. As Mr. Cortes was led from the precinct at 8:05 a.m. with his right arm in a sling, defendant Peter Rodeschin pulled on and tightened the handcuff on plaintiff's left wrist, which was attached to his belt loop, making the transport more painful. Rodeschin Dep., Harvis Decl., Ex. 4, p. 201, ln. 12-p. 202, ln. 11; Cortes Dep., Harvis Decl., Ex. 2, p. 133, ln. 24-p. 134, ln. 14.

42. Mr. Cortes arrived at Elmhurst Hospital at 8:19 a.m. complaining of shoulder and neck pain as a result of being "assaulted and pushed against some bars." Elmhurst Hospital Medical Records, Harvis Decl., Ex. 7, at P21.

43. While at Elmhurst Hospital, a non-party escort officer warned Mr. Cortes to leave the hospital quickly so he could be taken to central booking, lest he be returned to the precinct with the officers who had hurt him. Cortes Dep., Harvis Decl., Ex. 2, p. 130, ln. 8-10. ("The officer told me if I didn't recover he would have to take me to the precinct and if I stayed there, it was going to be bad for me if I stayed at the hospital.").

44. Mr. Cortes told hospital workers that he had been "assaulted" and "pushed against bars." Elmhurst Hospital Medical Center Record, Harvis Decl., Ex. 7.

45. At his arraignment later that day, plaintiff's public defender made a record of his injuries, noting that he had been injured inside the precinct when "five officers pushed him up against the wall and he sustained injuries to his shoulder." Mr. Cortes was released on his own recognizance and the charges were later dismissed. Transcript of Criminal Court proceedings, Harvis Decl., Ex. 8 at P165-66; Certificate of Disposition, Harvis Decl., Ex. 20.

46. Mr. Cortes sustained permanent and debilitating injury inside the precinct that morning. *See* Expert Report of Drew A. Stein, M.D., Harvis Decl., Ex. 9 ("The patient's complaints and surgery are, within a reasonable degree of medical certainty, related to the described accident on 7/1/13…The patient has a marked orthopedic disability."). Dr. Stein's report was prepared before Mr. Cortes underwent a second surgical intervention in August 2016. *See* Harlem Health Center Surgical Pre-Admission Form, Harvis Decl., Ex. 10, generally.

Dated:    January 13, 2017
             New York, New York

HARVIS & FETT LLP

_____
Gabriel P. Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

*Attorneys for plaintiff*