

GABRIEL P. HARVIS
BAREE N. FETT

September 29, 2016

BY E-MAIL
Elissa B. Jacobs, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

    Re:    *Cortes v. City of New York, et al.*, 14 CV 3014 (SLT) (RML)

Dear Ms. Jacobs:

I write in connection with outstanding issues in this case.

### Defendants Lack a Good Faith Basis to Move for Summary Judgment

As evidenced by defendants' pre-motion letter application dated September 15, 2016 (DE #49) – which was premature, defective,[1] made without notice to the undersigned and omitted the parties' discussions regarding narrowing of claims – and as you indicated when we spoke after that letter was filed, defendants have made a tactical decision to move for summary judgment in this case. While defendants are free to adopt any litigation strategy they wish, you are of course constrained by Rule 11, which requires counsel to make only nonfrivolous arguments supported by the law.

The arguments in defendants' September 15th letter violate Rule 11. First, as we had discussed prior to the filing of defendants' September 15th letter, plaintiff has agreed to withdraw his claims for unlawful stop and search, false arrest, malicious prosecution, denial of fair trial and *Monell*. It is nothing but bad faith and an abject waste of the

---

[1] Pursuant to § III(A) of the Individual Practices of the Honorable Sandra L. Townes: "A statement pursuant to Local Civil Rule 56.1 *must* be attached to the letter if a party is requesting a pre-motion conference for a motion for summary judgment under FRCP 56." (emphasis added). No Local Rule 56.1 statement was included with defendants' September 15th letter.

Elissa B. Jacobs, Esq.
Sept. 29, 2016

Court and parties' time for defendants to commence motion practice regarding claims that plaintiff has agreed to discontinue voluntarily.

Second, the argument that plaintiff cannot establish "personal involvement" on these facts lacks good faith. As an initial matter, defendants never challenged the sufficiency of plaintiff's allegations under Rules 8 or 12 or even served interrogatories in this case. This is not a situation where plaintiff seeks to hold some third party responsible for the actions of another or look far up the chain of command for liability.

Rather, the record reflects that Mr. Cortes has maintained since the day he was injured thirty-nine months ago that he sustained a severe shoulder injury when he was pushed by five officers inside the precinct, and Mr. Cortes has provided consistent testimony, including specific descriptions of the officers involved. *See, e.g.*, Plaintiff's Deposition Transcript, pp. 114-121 (providing details of his account and descriptions of the officers); P166 (Transcript of plaintiff's July 1, 2013 Arraignment) ("Five officers escorted [Mr. Cortes] to the bathroom where they pushed him up against the wall and he sustained injuries to his shoulder. Those are not injuries he sustained at the scene, Judge."). The law is clear that such allegations satisfy the personal involvement requirement of § 1983. As Judge Townes recently explained:

> A police officer is personally involved in the use of excessive force if [he] either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though [he] had a reasonable opportunity to do so." *Russo v. DiMilia,* 894 F.Supp.2d 391, 414 (S.D.N.Y. 2012) (citation omitted).

*Codrington v. City of New York*, No. 12-CV-01650 (SLT) (SMG), 2015 WL 893567, *10 (E.D.N.Y. Mar. 2, 2015).

There is no requirement for plaintiff to have known the names of the officers who assaulted him at the outset of the litigation. Indeed, there is a well-developed body of law in the Second Circuit allowing civil rights plaintiffs to utilize the discovery process to identify unknown tortfeasors. *See, e.g., Castro v. City of New York*, 94-CV-5114 (JFK), 1995 WL 699730, *1 (S.D.N.Y. Nov. 28, 1995) (discussing with approval the use of depositions to name unidentified civil rights defendants). In this case, plaintiff has proceeded in the most responsible way possible, accumulating documentary evidence, photographs and video depositions in order to properly identify the officers involved in his assault and the denial of medical treatment to him.

Elissa B. Jacobs, Esq.
Sept. 29, 2016

Now that discovery has concluded – with the exception of depositions of defendant Schulz, the EMTs and defendant Rzonca, which the parties have agreed to conduct before trial, and the court-ordered production of ESI information from the defendant officers, which remains outstanding – plaintiff is in a position to name the officers who assaulted him, mistreated him afterwards and denied him medical care.

The defendant who brought Mr. Cortes from the cell to the bathroom was Christopher Musa. Mr. Cortes was pushed against the cell bars in the auxiliary cell area by defendants Musa, Cappuccia, Ryan and Smith. We believe, and will confirm following his deposition, that defendant Schulz was Mr. Cortes's fifth assailant. Defendant Daly, seated at the desk with the auxiliary cells in plain view, was aware of the assault and injury, of plaintiff's placement in the cell with handcuffs afterwards and of his request for and need of medical treatment, but took no action, giving rise to liability against him. *See, e.g., Codrington*, 2015 WL 893567 at *10 (Townes, D.J.) ("The Second Circuit has defined personal involvement to mean direct participation, such as personal participation by one who has knowledge of the facts that rendered the conduct illegal, or indirect participation, such as ordering or helping others to do the unlawful acts.") (quotation marks and citations omitted). Likewise, defendant Rodeschin was aware of plaintiff's assault, injury, request for and need of medical treatment and the cover-up, and actively abetted the officers who assaulted Mr. Cortes, giving rise to liability against him.[2] *Id.*

In fact, the medical treatment of prisoner forms prove that supervisory staff had knowledge of the injury for at least an hour and a half prior to summoning an ambulance, as corroborated by the deposition testimony of defendant Sergeants Daly and Rodeschin. *See* Daly Deposition Transcript, p. 162, ln. 24 – p. 163, ln. 4 (Q: According to [the medical treatment of prisoner form], at 6 a.m. you were aware that Gonzalo Cortes had an injury or a complaint of injury to his shoulder? A: Yes.); Rodeschin Deposition Transcript, p. 128, ln. 24 – p. 129, ln. 6 (Q: [D]id the precinct already know that there was a complaint of injury from [Mr. Cortes] when you learned about it from him directly? A: Yeah.).

---

[2] In the best of faith, in addition to withdrawing the claims mentioned above as previously discussed, plaintiff is also prepared to voluntarily withdraw all claims against defendants Rzonca, Ruggierro and Cestaro.

Elissa B. Jacobs, Esq.
Sept. 29, 2016

In light of this proffer and the existing record, with which it comports entirely, any motion defendants file regarding personal involvement lacks good faith and will constitute a Rule 11 violation.

Third, no nonfrivolous argument against plaintiff's deliberate indifference claim can be advanced on this record. In *Weyant v. Okst*, the Second Circuit considered deliberate indifference claims by a diabetic plaintiff who was in need of insulin at the time of his arrest. 101 F.3d 845, 848 (2d Cir.1996). Even as the *Weyant* plaintiff's condition worsened in the police car, the defendant officers refused to take him to a hospital and took him to a precinct instead. *Id.* at 849. The Second Circuit held that "a reasonable jury could infer that … [the defendants] … denied him such [immediate medical] care because they were deliberately indifferent to that need [for medical attention]." *Id.* at 857.

The facts here are considerably more compelling than in *Weyant*, given plaintiff's allegation that each of the defendants either caused him to suffer the complete rotator cuff tear, or was at the very least aware of plaintiff's severe injury and need for treatment; the defendants nevertheless caused him to be sadistically handcuffed for at least 90 minutes. *Id.* at 856 ("[I]n order to establish deliberate indifference, a plaintiff must show something more than mere negligence; but proof of intent is not required, for the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.") (citations and quotations omitted); *see also Mills v. Fenger*, 216 F. App'x 7, 10-11 (2d Cir. 2006) ("Mills has presented adequate evidence to create a triable issue of fact as to the officers' subjective awareness of his injury: his testimony that he could not stand or walk (a symptom medically consistent with a ruptured patellar tendon), his claims that he repeatedly informed the officers of his injury, the written comment of his arraigning judge that he 'NEEDS MEDICAL ATTENTION,' and the undisputed fact of his injury. Further, defendants are not entitled to qualified immunity because a pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' at the time these events transpired.") (citing *Liscio v. Warren*, 901 F.2d 274, 276-77 (2d Cir. 1990)); *Wong v. Yoo*, 649 F. Supp. 2d 34, 64 (E.D.N.Y. 2009) (sustaining deliberate indifference to medical needs claim at summary judgment following twenty-minute delay in care: "a reasonable fact-finder could find that some or all of defendants …received information, and could see for themselves, that plaintiff was in serious need of immediate medical care and yet denied him such care because they were deliberately indifferent to that need.").

Elissa B. Jacobs, Esq.
Sept. 29, 2016

  Plaintiff's injury, a complete tear of the rotator cuff, is plainly serious enough to meet the first prong of the deliberate indifference standard. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for Eighth Amendment violations contemplates a condition of urgency that may result in degeneration or extreme pain."); *Garcia v. Basdeo*, 04-CV-4129 (RLM), 2005 WL 2002450, *6 (E.D.N.Y. Aug. 19, 2005) ("Defendants do not dispute that a torn rotator cuff is a serious injury…").

  In terms of *scienter* (the second prong of the inquiry), this case is analogous to *Pizzuto v. County of Nassau*, where Judge Garaufis granted judgment to the plaintiff on his medical deliberate indifference claims:

> Defendants Velazquez and Regnier brutally beat Pizzuto and left him moaning in his cell. Thereafter, they decided not to file an accident report and further advised their supervisor, Gary Pincus, that no such report was needed. The effect of these actions was to preclude Pizzuto from receiving immediate medical attention. Although Pizzuto was sent to the Medical Unit later in the day by defendant Bergen, this was done despite the efforts of Velazquez, Regnier and Bavaro. It is therefore clear that Defendants were indifferent to Pizzuto's medical needs.
>
> …Bavaro, having witnessed the beating first hand, should have likewise known of the seriousness of Pizzuto's injuries. I therefore grant summary judgment against Velazquez, Regnier and Bavaro with respect to Count VI.

239 F. Supp. 2d 301, 311 (E.D.N.Y. 2003) (citations omitted).

  In sum, defendants' desire to delay the matter must yield to their counsel's ethical obligations under Rule 11 to present colorable arguments to the Court. Defendants' contemplated arguments run afoul of Rule 11 and will be presented at their peril.

Elissa B. Jacobs, Esq.
Sept. 29, 2016

    Please do not hesitate to contact me with any questions. Thank you for your attention to this matter.

Yours truly,

Gabriel P. Harvis