UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

GONZALO CORTES,

                Plaintiff,

       -against-

CITY OF NEW YORK, et al.,

               Defendants.

--------------------------------------------------------- x

                   14 CV 3014 (SLT) (RML)


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


**HARVIS & FETT LLP**
305 Broadway, 14th Floor
New York, New York 10007


*Attorneys for plaintiff*

January 13, 2017

# TABLE OF CONTENTS

Page

THE ASSAULT OF GONZALO CORTES ........................................................................ 1

THE IDENTIFICATION PROCESS ............................................................................. 5

THE SUMMARY JUDGMENT STANDARD ................................................................. 9

ARGUMENT ............................................................................................................... 10

    I. DEFENDANTS HAVE IMPROPERLY TREATED THE RECORD ...............10

    II. EVERY MATERIAL FACT IN THIS CASE IS GENUINELY DISPUTED, PRECLUDING SUMMARY JUDGMENT ....................................12

        A. Excessive Force ........................................................................14

        B. Deliberate Indifference ...........................................................15

        C. Failure to Intervene .................................................................18

    III. THE DEFENDANTS WERE EACH PERSONALLY INVOLVED ...............18

        A. Sergeant Stephen Daly..............................................................20

        B. Sergeant Peter Rodeschin..........................................................20

        C. Police Officer Christopher Musa ............................................21

        D. Police Officer Matthew Smith ................................................21

        E. Police Officers Shaun Ryan, Mario Cappuccia and Andrew Schulz ........................................................................................22

    IV. QUALIFIED IMMUNITY DOES NOT APPLY ........................................... 22

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113 (2d Cir. 2004) .............................. 9, 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 9, 14

*Binder & Binder PC v. Barnhart,* 481 F.3d 141 (2d Cir. 2007 ........................................... 10

*Blair v. City of N.Y.*, 03-CV-1485 (SLT) (CLP), 2009 WL 959547 (E.D.N.Y. Mar. 31, 2009) ................................................................................................................................ 23

*Castro v. City of New York*, 94-CV-5114 (JFK), 1995 WL 699730 (S.D.N.Y. Nov. 28, 1995) ................................................................................................................................. 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................... 9

*Chance v. Armstrong,* 143 F.3d 698 (2d Cir. 1998) .............................................................. 17

*Codrington v. City of N.Y.*, 12-CV-01650 (SLT) (SMG), 2015 WL 893567 (E.D.N.Y. Mar. 2, 2015) ............................................................................................................... 14, 18

*Costello v. N.Y. State Nurses Ass'n*, 783 F.Supp.2d 656 (S.D.N.Y. 2011) ........................... 11

*Douglas v. City of New York*, 595 F.Supp. 2d 333 (S.D.N.Y. 2009).................................... 22

*Felmine v. City of New York*, 09–CV–3768 (CBA) (JO), 2011 WL 4543268 (E.D.N.Y. Sept. 29, 2011) ............................................................................................................. 14, 15

*Garcia v. Basdeo,* 04-CV-4129 (RLM), 2005 WL 2002450 (E.D.N.Y. Aug. 19, 2005)...... 17

*Gonsalves v. City of New Bedford*, 939 F. Supp. 921 (D. Mass. 1996) ................................ 14

*Graham v. Connor*, 490 U.S. 386 (1989)........................................................................... 13, 14

*Grandstaff v. City of Borger, Texas,* 767 F.2d 161 (5th Cir. 1985)..................................... 19

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ......................................................................... 22

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001)................................................. 10, 11

*Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246 (2d Cir. 2001) ............................. 19

*Kerman v. City of New York,* 261 F.3d 229 (2d Cir. 2001) .................................................... 22

*Liscio v. Warren,* 901 F.2d 274 (2d Cir. 1990)..................................................................... 16

*Maloney v. Cty. of Nassau*, 03-CV-4178 (SLT) (MLO), 2010 WL 3940456 (E.D.N.Y. Sept. 30, 2010), *aff'd,* 500 F. App'x 30 (2d Cir. 2012)....................................................... 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ............................. 9

Matthews v. City of New York, 889 F.Supp.2d 418 (E.D.N.Y. 2012) .............................. 18

*McLaurin v. Falcone,* 2007 WL 247728 (2d Cir. 2007) ..................................................... 22

*Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000) ................................................................... 19

*Mills v. Fenger*, 216 F. App'x 7 (2d Cir. 2006) ...................................................... 13, 16, 24

*Morgan v. Nassau Cty.,* 03-CV-5109 (SLT) (WDW), 2009 WL 2882823 (E.D.N.Y. Sept. 2, 2009)................................................................................................................................ 15

*Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, 07-CV-8828 (ER), 2013 WL 3929630, (S.D.N.Y. July 30, 2013) ................................................................................................ 11

*Pearson v. Callahan*, 129 S. Ct. 808 (2009) ........................................................................ 22

*Pizzuto v. County of Nassau*, 239 F. Supp. 2d 301 (E.D.N.Y. 2003) ...................... 17, 18, 24

*R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54 (2d Cir. 1997) .................................................. 10

*Robison v. Via,* 821 F.2d 913 (2d Cir. 1987) ..................................................................... 22

*Russo v. DiMilia,* 894 F.Supp.2d 391 (S.D.N.Y. 2012) ..................................................... 18

*Rutherford v. City of Berkeley,* 780 F.2d 1444 (9th Cir. 1986) .......................................... 19

*Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990) ....................................................... 19

*Skorupski v. Suffolk Cty.*, 652 F. Supp. 690 (E.D.N.Y. 1987) .................................... 13, 19

*Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002) ....................................................... 19

*Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003) ................................................................ 23

*Usavage v. Port Auth. of N.Y. & New Jersey*, 932 F. Supp. 2d 575 (S.D.N.Y. 2013) ........... 18

*Vasquez v. City of N.Y.*, 11-CV-3024 (SLT) (VVP), 2013 WL 5519981 (E.D.N.Y. Sept. 30, 2013) .......................................................................................................... 23, 24

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ................................................................... 24

*Watts v. Laurent*, 774 F. 2d 168 (7th Cir. 1985) ............................................................ 20

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ..................................................... 14, 15, 16

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ..................................................... 19, 22

*Wong v. Yoo*, 649 F. Supp. 2d 34 (E.D.N.Y. 2009) .......................................................... 16

*Woods v. Goord*, 01-CV-3255 (SAS), 2002 WL 731691 (S.D.N.Y. April 23, 2002) ........... 24

## STATUTES

42 U.S.C. § 1983 ............................................................................................................ 14

## RULES

FED. R. CIV. P. 56 ............................................................................................................. 9

FED. R. CIV. P. 56(c) ......................................................................................................... 9

FED. R. CIV. P. 56(e) ......................................................................................................... 9

## THE ASSAULT OF GONZALO CORTES

Plaintiff Gonzalo Cortes is a Columbian immigrant with no criminal record who has worked for over a decade as a food runner at the Warwick Hotel in midtown Manhattan. *See* Deposition of Gonzalo Cortes ("Cortes Dep."), annexed to the Declaration of Gabriel P. Harvis dated January 13, 2017 ("Harvis Decl.") as Exhibit ("Ex.") 2, p. 7, ln. 23-24; p. 11, ln. 4-7; p. 20, ln. 20-22.

In the early morning hours of July 1, 2013, Mr. Cortes, who served honorably in the military in his native Columbia and is gay, was involved in a verbal dispute with a bartender at Friends Tavern, a bar on Roosevelt Avenue in Queens catering to gay Columbian immigrants. Cortes Dep., Harvis Decl., Ex. 2, p. 29, ln. 12-15; p. 32, ln. 19-p. 33, ln. 25; p. 38, ln. 1-2; Plaintiff's Local Civil Rule 56.1 Counterstatement, ("Plaintiff's 56.1") ¶¶ 18-21. Mr. Cortes called 911 to report that the bartender had defrauded him, but the responding NYPD officers, ignoring immediately available exculpatory evidence including video, arrested Mr. Cortes on the uncorroborated complaint of the bartender. Plaintiff's 56.1 at ¶¶ 20-21.

Mr. Cortes arrived at the 115th Precinct by 3:45 a.m. sober and uninjured. *Id.* at ¶ 22. With the precinct's midnight duty captain on extended sick leave, the desk sergeant was the ranking officer for overnight shifts. Deposition of Sergeant Guzman ("Guzman Dep."), annexed to Harvis Decl. as Ex. 3, p. 128, ln. 24-p. 130, ln. 17. Mr. Cortes's personal property was confiscated and he was put into a cell, already crowded with eight or nine other men, that had no toilet. Plaintiff's 56.1 at ¶ 23. Approximately an hour later, at 4:45 a.m.,

Mr. Cortes asked to use the bathroom and was taken out of the cell and handcuffed by defendant Christopher Musa. *Id.* at ¶¶ 24-25. Defendant Musa took Mr. Cortes to another area of the precinct and through a metal door leading to a dark hallway and a set of vacant cells. *Id.* at ¶ 25. Mr. Cortes grew scared. *Id.* at ¶ 26. Looking behind him, plaintiff saw – in addition to Musa – defendants Cappuccia, Smith, Schulz and Ryan. *Id.* Mr. Cortes nervously told the officers that he no longer needed to use the restroom and would like to go back to the holding cell. *Id.* at ¶ 27.

The officers violently yanked Mr. Cortes, who was handcuffed, and pushed him into cell bars with such force that it completely tore the rotator cuff from his right shoulder. *Id.* at ¶ 28. With Mr. Cortes still pressed against the cell bars, defendant Musa whispered in his ear, "oh, I thought you wanted to go to the bathroom." *Id.* at ¶ 29. The assault took place in the direct line-of-sight of desk sergeant Stephen Daly, who only an hour earlier had recorded Mr. Cortes as uninjured in the precinct's command log. *Id.* at ¶ 30.

As Mr. Cortes explained at his deposition (through a Spanish interpreter):

> When I told him that I didn't want to go to the restroom, that I want to go back, that's the moment they grabbed me and they pushed me against the cell and that's when they hurt my shoulder. He was very angry and he whispered to my ear, "you asked me to go to the bathroom." Cortes Dep, Harvis Decl., Ex. 2 at p. 114, ln. 23-115, ln. 5.

Having just participated in the assault and with Mr. Cortes severely injured and in obvious agony, defendant Musa walked him back to the crowded cell and locked him inside without removing the handcuffs. *Id.* at ¶ 32. FDNY Pre-Hospital Care Report, annexed to

Harvis Decl. as Ex. 5 (reflecting that no ambulance was called until 7:27 a.m.). Mr. Cortes remained handcuffed in the cell for approximately three hours (from 4:45 a.m. to 7:37 a.m.), enduring excruciating pain as the handcuffs cut the skin of his wrists. *Id.* at ¶ 32.

Despite NYPD regulations requiring in-custody injuries to be documented and promptly reported up the chain of command and to the internal affairs bureau, Mr. Cortes's injury was never documented or reported. *Id.* at ¶ 35. Instead, as he remained handcuffed in the cell, officers prepared two different "medical treatment of prisoner" forms, one indicating a "pre-existing" injury and one indicating a "new" injury. *Id.* at ¶ 36. Both forms reflect defendant desk sergeant Stephen Daly having signed them at 6:00 a.m., although an ambulance was not even requested for Mr. Cortes until at least 7:27 a.m. and Daly would later deny the authenticity of his signature on the forms. *Id.* at ¶ 37.

At 6:30 a.m., defendant Peter Rodeschin arrived at the precinct to begin his shift as desk sergeant. *Id.* at ¶ 38. Sergeant Rodeschin admits that he altered the prior command log entry concerning Mr. Cortes's physical condition as originally written by Sergeant Daly. *Id.* at ¶ 39. In what appears to have been a purposeful effort to hide evidence of plaintiff's assault, without initialing the change as required by department rules – and without calling an ambulance or notifying internal affairs – Rodeschin crossed out the word "normal" and wrote "Injury to Shoulder RMA." *Id.* at ¶ 39. A further hour would pass before an ambulance was ultimately summoned for Mr. Cortes. *Id.* at ¶ 37.

Mr. Cortes testified that while he was in the cell following the assault for a period of approximately three hours, he suffered severe and increasing pain in his shoulder,

exacerbated by the handcuffs on his wrists. *Id.* at ¶ 32. Mr. Cortes repeatedly asked for medical treatment beginning immediately after the assault, but the defendants refused to even acknowledge him. *Id.* at ¶ 33. When an officer did speak to Mr. Cortes, it was to convey the threat that plaintiff would be "the last person to leave" the precinct if he insisted on receiving medical treatment. *Id.* Plaintiff testified: "I told him I didn't care, that I was in pain." *Id.*

When medical technicians finally reached plaintiff inside the precinct at approximately 7:37 a.m., they requested that plaintiff's handcuffs be removed and, suspecting dislocation, noted deformity of Mr. Cortes's right shoulder. *Id.* at ¶ 34. Plaintiff stated to the EMTs inside the precinct that, at 4:00 a.m., "PD took him down when he went to the bathroom." *Id.* ("onset time: 4:00 a.m."). As Mr. Cortes was led from the precinct at 8:05 a.m. with his right arm in a sling, defendant Peter Rodeschin pulled on and tightened the handcuff on plaintiff's left wrist, which was attached to his belt loop, making the transport more painful. *Id.* at ¶ 41.

Mr. Cortes arrived at Elmhurst Hospital at 8:19 a.m. complaining of shoulder and neck pain as a result of being "assaulted and pushed against some bars." *Id.* at ¶ 42. A non-party escort officer warned Mr. Cortes to leave the hospital quickly so he could be taken to central booking, lest he be returned to the precinct with the officers who had hurt him. *Id.* at ¶ 43. ("The officer told me if I didn't recover he would have to take me to the precinct and if I stayed there, it was going to be bad for me if I stayed at the hospital.").

At arraignment later that day, the public defender assigned to Mr. Cortes made a record of plaintiff's injuries in open court:

> The Court:    …Is this a cross complaint? …I ask because your client is in a sling. …Do you want to make a record about the injuries?
>
> [Public Defender]:    Yes, Judge.…Mr. Cortes informed me that at the precinct he had wanted to use the restroom. There was some verbal altercation with one of the officers. Five officers escorted him to the bathroom where they pushed him up against the wall and he sustained injuries to his shoulder. He had to go to the hospital. Those are not injuries he sustained at the scene, Judge.

*Id.* at ¶ 45. Mr. Cortes was released on his own recognizance and the charges were later dismissed. *Id.*

Subsequent treatment would reveal that Mr. Cortes sustained permanent and debilitating injury inside the precinct that morning. *Id.* at ¶ 46. ("[Plaintiff's] complaints and surgery are, within a reasonable degree of medical certainty, related to [being thrown into bars] on 7/1/13…The patient has a marked orthopedic disability."). Dr. Stein's report was prepared before Mr. Cortes underwent a second surgical intervention. *Id.*

## THE IDENTIFICATION PROCESS

From the outset of this case, the City of New York – responsible for its own defense and that of the individual officers – adopted the theory that the incident described by plaintiff never took place. *See* Defendants' Answer to the Third Amended Complaint, annexed to Harvis Decl. as Ex. 21. This basic fact dispute defines the case and has persisted despite mounting evidence corroborative of plaintiff's claims.

When discovery in the matter began over thirty months ago, defendants' general denials required plaintiff to undertake an exhaustive investigation to determine the names of the five officers who injured Mr. Cortes, denied him care and then attempted to hide their involvement.

Plaintiff served detailed document requests at the initial conference seeking, *inter alia*, relevant precinct records and photographs of white male officers who were inside the precinct at the relevant time. In June 2015, the Hon. Robert M. Levy ordered defendants to produce those officers' photographs and plaintiff reviewed them. *See* Order dated June 10, 2015. Guided by a review of the evidence, which also included thousands of pages of documents, and by plaintiff's recollection, plaintiff then conducted twelve depositions – videotaping nine of them, including the defendants[1] – allowing plaintiff to review the footage and make certain that his identification was accurate. *See, e.g.*, Castro v. City of New York, 94-CV-5114 (JFK), 1995 WL 699730, *1 (S.D.N.Y. Nov. 28, 1995) (approving the use of photographs and depositions to identify John Doe civil rights defendants).

Once plaintiff was satisfied that he could identify each officer by name, he sent a letter by counsel to defendants outlining the specific role he claimed each individual had played in the disputed events. *See* Letter from G. Harvis to E. Jacobs dated September 29, 2016, annexed to Harvis Decl. as Ex. 16, at p. 3.

Defendants, for their part, took no discovery other than plaintiff's deposition. Defendants never served even basic discovery demands, let alone any request for a

---

[1] Due to the witness's prolonged unavailability, defendant Schulz has not yet been deposed.

description of the officers, which Mr. Cortes could have provided. Indeed, the only time Mr. Cortes was ever asked for descriptions was at his deposition in March 2016 where he definitively answered every question posed to him. Below is the entirety of the questioning regarding the appearance of the four officers who participated in the assault alongside defendant Musa:

> Q:    Do you remember what any of those four looked like?
>
> A:    They were tall, young, dark hair and they looked strong.
>
> Q:    And that's all four of them?
>
> A:    Yes. I'm five-seven and they were taller than I am.
>
> Q:    …All four of them had dark hair?
>
> A:    Yes.
>
> Q:    All four of them were white?
>
> A:    Yes.
>
> Q:    Were all four of them in uniform?
>
> A:    Yes.
>
> Q:    Were any of them wearing white shirt?
>
> A:    No.
>
> [End of topic]

Cortes Dep., Harvis Decl., Ex. 2, p. 120, ln. 25-p. 121, ln. 17.

Similarly, regarding defendant Musa, the entirety of the questioning concerning his appearance was as follows:

> Q:    Which officer came to escort you to the restroom? Is it an officer that you had seen before?
>
> A:    No.
>
> Q:    Can you describe that officer?

| A: | He was tall, he was a little strong. He was not young. He looked around thirty-five years old. |
|---|---|
| Q: | Is he white? |
| A: | White. |
| Q: | Do you know what color hair he had? |
| A: | Black. |
| Q: | Did he have any kind of facial hair? |
| A: | No. |
| Q: | Was he in uniform? |
| A: | Yes. |
| Q: | Wearing like a blue jacket and shirt? |
| A: | Blue shirt. |
| | [End of topic] |

Cortes Dep., Harvis Decl., Ex. 2, p. 111, ln. 10-25.

Notably, there is agreement between the descriptive information provided by plaintiff at his deposition and the actual appearance of the officer defendants, who cannot dispute having been present inside the precinct at the relevant time. *See* Prisoner Holding Pen Roster, annexed to Harvis Decl. as Ex. 22; Plaintiff's 56.1 at ¶¶ 25, 37-38. Defendants can point to nothing that casts doubt on plaintiff's description or identification.

Under these circumstances, defendants engage in abject misrepresentation when they state at Footnote 2 of their brief (at p. 3): "During his deposition, plaintiff was unable to provide specific descriptions of any of the officers who allegedly used force against him or who were present when force was used." There is no support in the record for this statement, yet it is the centerpiece of defendants' brief.

# THE SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment under FED. R. CIV. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" within the meaning of FED. R. CIV. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). "[I]f 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder &*

*Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

## ARGUMENT

## POINT I

## DEFENDANTS HAVE MISTREATED THE RECORD

As the Second Circuit explained in *Holtz v. Rockefeller & Co.*, "[t]he purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." 258 F.3d 62, 74 (2d Cir. 2001).

Here, of the approximately eight material facts defendants offer in their brief, the majority lack any support in the record. *See* Plaintiff's 56.1, *generally.*

For example, citing page 110 of plaintiff's deposition transcript, defendants claim as an undisputed fact that plaintiff asked to use the restroom "approximately two hours" after he arrived in the precinct. However, the testimony referenced in defendants' citation does not relate to the timing at all:

> Q:   Did any other officers come into the cell, come into the area where the cell and the computers were at the time?
>
> A:   When I was inside the cell, I asked him if I could use the restroom. Another officer came, he said yes, he would allow me to use the restroom.

Cortes Dep., Harvis Decl., Ex. 2, p. 110, ln. 10-15. In fact, as indicated in Plaintiff's 56.1 at ¶ 6, there is nothing to be found anywhere in the record to support this allegedly

"undisputed" assertion. The only testimony about the timing of the assault indicates that it took place approximately *an hour* after plaintiff arrived at the precinct, not two hours. *See* Plaintiff's 56.1 at ¶ 24. This is a critical distinction with respect to plaintiff's deliberate indifference claim, as it adds an additional hour to the time the officers knowingly kept plaintiff handcuffed in the cell with a torn rotator cuff.

By the same token, defendants mischaracterize the record to suggest that only one officer was present for the assault. *See* Plaintiff's 56.1 at ¶¶ 9-10. This is a particularly brazen effort, given that plaintiff's claim of being assaulted by "five officers" was memorialized on the day it happened and described repeatedly and in detail at plaintiff's deposition. *Id.* at ¶¶ 26-28 ("When I refused to go inside the bathroom, I looked back and there were five officers."); ¶ 45 ("[F]ive officers pushed him up against the wall and he sustained injuries to his shoulder.").

"[W]here, as here, the cited materials…do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions must be disregarded and the court may review the record independently." *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, 07-CV-8828 (ER), 2013 WL 3929630, *1 (S.D.N.Y. July 30, 2013) (citing *Holtz*, 258 F.3d at 74 and *Costello v. N.Y. State Nurses Ass'n*, 783 F.Supp.2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding party's Rule 56.1 statement due to failure to refer to evidence in the record)).

Plaintiff respectfully requests that the Court thus disregard those purportedly undisputed facts offered by defendants that lack support in the record, review the record independently and deny defendants' motion.

## POINT II

## EVERY MATERIAL FACT IN THIS CASE IS GENUINELY DISPUTED, PRECLUDING SUMMARY JUDGMENT

As described above, defendants have misrepresented the record in their effort to obtain summary judgment. Absent from their papers is any acknowledgement that this matter is defined by a basic, immutable dispute of fact. On the one hand, plaintiff has maintained from the day it happened, and consistently for the last thirty-nine months, that he was assaulted by five officers while handcuffed, and then cruelly left in a cell handcuffed and injured for hours. Plaintiff's 56.1 at ¶¶ 24-37.

Defendants claim nothing happened, but offer no credible or consistent counter-explanation for plaintiff's severe injury or defendants' own conflicting police paperwork showing that plaintiff arrived at the precinct uninjured.[2] Defendant Rodeschin was asked about the issue at his deposition:

> Q: What is your explanation for [plaintiff allegedly having a severe pre-existing injury at arrest, but being reported in the arrest report, command log and medical treatment of prisoner form as having arrived at the precinct uninjured]?
>
> A: …My explanation, would be my opinion, is guys simply don't fill things out right.

Rodeschin Dep., Harvis Decl., Ex. 4, p. 142, ln. 19-24.

---

[2] During the course of discovery, the Hon. Robert M. Levy entered a spoliation order regarding documents defendants were unable to produce, including the "prisoner pedigree form," which reflects the physical condition of an arrestee. *See* Order dated September 13, 2016 and Docket Entry 47.

Likewise, defendant Daly, the desk sergeant on duty when plaintiff was injured, conceded at deposition that supervisors were aware by at least 6:00 a.m. that Mr. Cortes had a shoulder injury, but could offer no explanation for the admitted 90-minute delay in calling an ambulance, let alone the actual delay, which plaintiff alleges was approximately three hours:

> Q:    …[D]o you believe that a supervisor was aware that Gonzalo Cortes had a shoulder injury at six o'clock?
>
> A:    Yes.
>
> Q:    And assuming that the supervisor was aware of a shoulder injury, what would have been the appropriate action for that supervisor to take at that time?
>
> A:    To call an EMT.

Daly Dep., Harvis Decl., Ex. 1, p. 167, ln. 12-22.

> Q:    …Can you think of a reason why a desk sergeant would delay calling an ambulance once the sergeant became aware that someone inside the precinct needed medical attention?
>
> A:    No, there should be no reason.

Daly Dep., Harvis Decl., Ex. 1, p. 57, ln. 17-24.

When described accurately and in a favorable light, as required, plaintiff's allegations – once proven – plainly amount to the violation of clearly-established constitutional rights. *Mills v. Fenger*, 216 F. App'x 7, 10-11 (2d Cir. 2006) ("[A] pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' [prior to 2006].") (citations omitted); *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Skorupski v. Suffolk Cty.*, 652 F. Supp. 690, 694 (E.D.N.Y. 1987) ("The law is clear that a police officer

has an affirmative duty to intervene and prevent the unlawful use of force by other officers in his presence."); *see also Gonsalves v. City of New Bedford*, 939 F. Supp. 921, 925 (D. Mass. 1996) ("[T]here is a viable claim to recover under 42 U.S.C. 1983 for an intentional cover-up if the cover-up caused the jury's inability to decide who is responsible for the constitutional violations which were proven and, therefore, injured the plaintiff by depriving [him] of the damage award [he] would have otherwise recovered.").

Under such circumstances, summary judgment is inappropriate. *Anderson*, 477 U.S. at 248; *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

A. **Excessive Force**

An excessive force claim under Section 1983 is governed by the "objective reasonableness" standard of the Fourth Amendment. *Codrington v. City of N.Y.*, 12-CV-01650 (SLT) (SMG), 2015 WL 893567, *8 (E.D.N.Y. Mar. 2, 2015) (citing *Graham*, 490 U.S. at 395). "Because this inquiry is necessarily fact-specific, summary judgment is inappropriate 'unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.'" *Id.* (quoting *Amnesty Am.,* 361 F.3d at 123). Assuming a reasonably jury could conclude the conduct was unreasonable, there is no requirement that a plaintiff sustain a severe injury. *Id.* at *9 ("Put simply, the Second Circuit does not appear to place a demanding requirement on excessive force plaintiffs to demonstrate injury.") (quoting *Felmine v. City of New York*, 09–CV–3768 (CBA) (JO), 2011 WL 4543268, *19 (E.D.N.Y. Sept. 29, 2011) (quotation marks omitted).

As the Hon. Carol Bagley Amon held in denying summary judgment to the *Felmine* defendants (with injuries much less severe than plaintiff's):

> Crediting the allegations in the plaintiff's deposition, and recognizing the ambiguity as to the source of the injuries documented in the medical records, the Court cannot conclude as a matter of law that no rational trier of fact could find that the defendants used an unreasonable amount of force— particularly in light of …the lack of any evidence that he resisted or posed any other threat at that time. A reasonable jury could credit the plaintiff's assertions that the defendants shoved him into the car door and the wall, intentionally tightened his handcuffs to cause him pain, and ignored his requests that the handcuffs be loosened. The jury could likewise conclude that these uses of force resulted in some compensable harm.

*Felmine*, 2011 WL 4543268 at *20.

Given the manifest unreasonableness of the officers' conduct as related by plaintiff – assaulting him without provocation while he was handcuffed, causing permanent injury – and defendants' bare denial the events took place, a jury must decide the issue. Although it is unclear from defendants' brief the extent to which they actually seek summary judgment on plaintiff's excessive force claim, plaintiff respectfully urges the Court to deny their motion in all respects.

## B. Deliberate Indifference

As this Court explained in *Morgan v. Nassau Cty.*, a police officer "may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." 03-CV-5109 (SLT) (WDW), 2009 WL 2882823, *13 (E.D.N.Y. Sept. 2, 2009) (quoting *Weyant*, 101 F.3d at 856 (quotation marks omitted)).

In *Weyant*, triable issues of fact were held to exist concerning the provision of medical treatment to a diabetic arrestee. *Weyant*, 101 F.3d at 848. The facts here are considerably more compelling, given plaintiff's allegation that the defendants themselves caused the serious injury at issue by an unprovoked attack while plaintiff was handcuffed and vulnerable.

Instead of calling an ambulance for the serious injury they had caused, defendants confined Mr. Cortes to a cell in handcuffs, causing him excruciating pain and potentially exacerbating his injury. The constitution does not allow for such conduct. *Id.* at 856 ("[I]n order to establish deliberate indifference, a plaintiff must show something more than mere negligence; but proof of intent is not required, for the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.") (citations and quotations omitted); *see also Mills*, 216 F. App'x at 10-11 ("Mills has presented adequate evidence to create a triable issue of fact as to the officers' subjective awareness of his injury: his testimony that he could not stand or walk (a symptom medically consistent with a ruptured patellar tendon), his claims that he repeatedly informed the officers of his injury, the written comment of his arraigning judge that he 'NEEDS MEDICAL ATTENTION,' and the undisputed fact of his injury. Further, defendants are not entitled to qualified immunity because a pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' at the time these events transpired.") (citing *Liscio v. Warren,* 901 F.2d 274, 276-77 (2d Cir. 1990)); *Wong v. Yoo*, 649 F. Supp. 2d 34, 64 (E.D.N.Y. 2009) (sustaining deliberate

indifference to medical needs claim at summary judgment following twenty-minute delay in care: "a reasonable fact-finder could find that some or all of defendants …received information, and could see for themselves, that plaintiff was in serious need of immediate medical care and yet denied him such care because they were deliberately indifferent to that need.").

Plaintiff's injury, a rotator cuff tear requiring multiple surgeries, is plainly serious enough to meet the first prong of the deliberate indifference standard. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for [deliberate indifference claims] contemplates a condition of urgency that may result in degeneration or extreme pain."); *Garcia v. Basdeo*, 04-CV-4129 (RLM), 2005 WL 2002450, *6 (E.D.N.Y. Aug. 19, 2005) ("Defendants do not dispute that a torn rotator cuff is a serious injury…").

In terms of *scienter* (the second prong of the inquiry), this case is analogous to *Pizzuto v. County of Nassau*, where the Hon. Nicholas G. Garaufis granted judgment *to the plaintiff* on his deliberate indifference claims:

> Defendants Velazquez and Regnier brutally beat Pizzuto and left him moaning in his cell. Thereafter, they decided not to file an accident report and further advised their supervisor, Gary Pincus, that no such report was needed. The effect of these actions was to preclude Pizzuto from receiving immediate medical attention. Although Pizzuto was sent to the Medical Unit later in the day by defendant Bergen, this was done despite the efforts of Velazquez, Regnier and Bavaro. It is therefore clear that Defendants were indifferent to Pizzuto's medical needs.…Bavaro, having witnessed the beating first hand, should have likewise known of the seriousness of Pizzuto's injuries. I therefore grant summary judgment against Velazquez, Regnier and Bavaro with respect to Count VI.

239 F. Supp. 2d 301, 311 (E.D.N.Y. 2003) (citations omitted).

C. **Failure to Intervene**

"Summary judgment is inappropriate when there are genuine disputes of material fact concerning what the officers who failed to intervene observed regarding the other officers' alleged violations of plaintiffs' constitutional rights." *Usavage v. Port Auth. of N.Y. & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Matthews v. City of New York*, 889 F.Supp.2d 418, 442–43 (E.D.N.Y. 2012) (quotation marks omitted).

Here, given defendants' blanket denials, there is no evidence to contradict plaintiff's credible and consistent allegation that he was attacked by five officers while handcuffed and left to suffer in a cell for three hours, while two supervisory officers have admitted to knowledge of plaintiff's injury without any explanation for their failure to take appropriate or prompt action. Plaintiff respectfully submits that a reasonable jury could conclude that there were ample opportunities throughout the events for these seven defendants to have intervened to protect Mr. Cortes, who was in a state of extreme vulnerability the entire time.

## POINT III

## THE DEFENDANTS WERE EACH PERSONALLY INVOLVED

"A police officer is personally involved in the use of excessive force if [he] either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though [he] had a reasonable opportunity to do so." *Codrington*, 2015 WL 893567 at *10 (citing *Russo v. DiMilia,* 894 F.Supp.2d 391, 414 (S.D.N.Y. 2012)). However,

> "[p]ersonal involvement" is not limited to direct participation
> by the supervisor in the challenged conduct, but may also be
> established by evidence of an official's (1) failure to take
> corrective action after learning of a subordinate's unlawful
> conduct, (2) creation of a policy or custom fostering the
> unlawful conduct, (3) gross negligence in supervising
> subordinates who commit unlawful acts, or (4) deliberate
> indifference to the rights of others by failing to act on
> information regarding the unlawful conduct of subordinates.
> *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 254 (2d
> Cir. 2001). Because "personal involvement is a question of
> fact[,] we are governed by the general rule that summary
> judgment may be granted only if no issues of material fact exist
> and the defendant[ ] is entitled to judgment as a matter of law."
> *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986).

*Maloney v. Cty. of Nassau*, 03-CV-4178 (SLT) (MLO), 2010 WL 3940456, *3 (E.D.N.Y.

Sept. 30, 2010), *aff'd,* 500 F. App'x 30 (2d Cir. 2012).

Mr. Cortes has presented clear evidence of the personal involvement of the named

defendants, and defendants have offered nothing to contradict his consistent account. *See*

*Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) ("we reject the argument that the

force administered by each defendant in this collective beating must be analyzed separately to

determine which of the defendants' blows, if any, used excessive force"); *Miller v. Smith*, 220

F.3d 491, 495 (7th Cir. 2000); *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990) (10

officers could be held liable where they acted as a unit); *Skorupski*, 652 F.Supp. at 694;

*Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986) (jury could infer that

three officers who were present during a beating participated in it); *Grandstaff v. City of*

*Borger, Texas*, 767 F.2d 161, 168 (5th Cir. 1985) (where numerous officers fired shots,

plaintiff's estate need not identify whose bullet killed him).

In *Watts v. Laurent*, 774 F. 2d 168 (7th Cir. 1985), the Court explicitly held that joint and several liability applied to § 1983 cases, and that an injured party may recover full damages against any number (including just one, some, or all) of the parties responsible:

> Federal common law principles of tort and damages govern recovery under section 1983. It is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury. In such a case the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions.

## A. Sergeant Stephen Daly

Defendant Daly was the desk sergeant when Mr. Cortes arrived at the precinct. Plaintiff's 56.1 at ¶ 30. In the command log, Daly described plaintiff's physical condition upon arrival as "normal." *Id.* Positioned with a direct view of the location of the assault, plaintiff alleges that Daly observed it, and, as the highest-ranking officer in the precinct, was aware of and ratified the punitive treatment Mr. Cortes suffered for three hours following the assault. Guzman Dep., annexed to Harvis Decl. as Ex. 3, p. 128, ln. 24-p. 130, ln. 17. Documents reflect that Daly signed two medical treatment forms at 6:00 a.m. regarding Gonzalo Cortes complaining of a shoulder injury, but admittedly never called an ambulance for him. Plaintiff's 56.1 at ¶¶ 35-37. At deposition, Daley disputed the signatures, but acknowledged they were attributed to him. *Id.* at ¶ 37.

## B. Sergeant Peter Rodeschin

Sergeant Rodeschin admits that when he arrived at the precinct at 6:30 a.m. he became aware of a prisoner claiming injury in the holding cell and altered without

attribution the physical condition entry regarding Mr. Cortes in the precinct's command log. Plaintiff's 56.1 at ¶ 39. Rodeschin admits to pulling the cuff on plaintiff's left arm as he was led out of the precinct, and claims to have had a series of conversations with plaintiff while he would have been in the cell handcuffed with a severe injury, consistent with plaintiff's allegation that officers attempted to talk him out of going to the hospital. Plaintiff's 56.1 at ¶¶ 33, 41; Rodeschin Dep. at 144, ln. 12-p. 145, ln. 10.

### C. Police Officer Christopher Musa

Defendants do not challenge Officer Musa's personal involvement. *See* Defendants' Memorandum of Law at p. 3 and n.2.

### D. Police Officer Matthew Smith

Defendant Smith was plaintiff's arresting officer, participated in the assault and prepared much of the paperwork documenting plaintiff's initial lack of injury. Plaintiff's 56.1 at ¶¶ 26-28. Additionally, Smith threatened plaintiff in response to plaintiff's initial requests for medical treatment. Plaintiff's 56.1 at ¶ 33. Notably, Smith also expressed doubt at his deposition that a signature attributed to him on the second medical treatment of prisoner form belonged to him. Smith Dep., Harvis Decl., Ex. 11, p. 181, ln. 4-8 (Q: You have doubts [that that is your signature]? A: Yes.). Smith was also responsible for preparing the spoliated prisoner pedigree form and other missing documents. Smith Dep., Harvis Decl., Ex. 11, p. 108, ln. 21-22; p. 110, ln. 10-18; p. 111, ln. 18-20.

**E. Police Officers Shaun Ryan, Mario Cappuccia and Andrew Schulz**

Documents establish (and there is no dispute) that defendants Ryan, Cappuccia and Schulz were each inside the precinct during and after plaintiff's attack. Plaintiff's 56.1 at ¶ 26. Following a thorough investigation, plaintiff has identified each of them as among his assailants and as parties to his three-hour denial of care, and it is respectfully submitted that plaintiff is entitled to present his claims against them to a jury. *Williams,* 781 F.2d at 323 (as a general principle "personal involvement is a question of fact").

**POINT IV**

**QUALIFIED IMMUNITY DOES NOT APPLY**

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"Defendants are not entitled to summary judgment if *any* reasonable trier of fact could find that the defendants' actions were objectively unreasonable." *Douglas v. City of New York*, 595 F.Supp. 2d 333, 341 (S.D.N.Y. 2009) (internal quotation omitted) (emphasis added). Where there are disputes as to material facts relevant to the qualified immunity analysis, it is reversible error to grant qualified immunity to a defendant on summary judgment. *McLaurin v. Falcone*, 2007 WL 247728, *1 (2d Cir. 2007) (citing *Kerman v. City of New York,* 261 F.3d 229, 239 (2d Cir. 2001) and *Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987)) ("Because there are disputes of fact here as to whether McLaurin

resisted arrest and whether the level of force used by the officers was necessary and reasonable, the District Court's grant of qualified immunity was premature.").

"It is well established that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (collecting cases) (quotation marks omitted). When analyzing qualified immunity in the excessive force context, "[t]he relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (collecting cases) (quotation marks omitted).

Plaintiff respectfully submits that the Court should deny qualified immunity here for the same reasons that it did in *Blair v. City of N.Y.* and *Vasquez v. City of N.Y.* In *Blair*, as here:

> Defendants have failed to show that their use of force against Plaintiff during the arrest or in the interrogation room at the precinct was lawful or that they as a matter of law reasonably believed that it was lawful. The extent of the force used is in dispute, and this Court cannot rule as a matter of law on the lawfulness of the force used or on whether detectives could have reasonably believed that the force used was lawful. Defendants, therefore, have not met their burden of establishing that they are entitled to summary judgment based on the qualified immunity defense.

*Blair v. City of N.Y.*, 03-CV-1485 (SLT) (CLP), 2009 WL 959547, *12 (E.D.N.Y. Mar. 31, 2009).

Similarly, as in *Vasquez,* defendants in this case do not suggest anything that might justify the use of force:

> In this case, Defendants do not suggest that Plaintiff was
> anything but cooperative when he was arrested. Plaintiff's
> narrative that police injured his arm during the arrest and that
> he repeatedly complained of pain, if accepted by a jury, could
> sustain a claim of excessive force. Indeed, the material fact in
> dispute is not principally whether the force was reasonable, but
> whether Officers Varecka and Sciame actually caused Plaintiff's
> injury.

*Vasquez v. City of N.Y.*, 11-CV-3024 (SLT) (VVP), 2013 WL 5519981, *10 (E.D.N.Y.

Sept. 30, 2013).

Lastly, it was clearly established on July 1, 2013 that a pretrial detainee could not be

recklessly denied treatment for a serious medical condition. *Mills,* 216 F. App'x at 10-11.

Accepting as true plaintiff's allegation that he was punitively confined to a crowded cell in

handcuffs for three hours after being brutally and permanently injured, in spite of the

officers' constitutional duty to obtain prompt care, the officers are not eligible for qualified

immunity. *See Pizzuto,* 239 F. Supp. 2d at 311; *Walczyk v. Rio*, 496 F.3d 139, 166-67 (2d

Cir. 2007) (Sotomayor, J., concurring); *see also Woods v. Goord*, 01-CV-3255 (SAS), 2002

WL 731691, at *10 (S.D.N.Y. April 23, 2002).

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motion in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
       January 13, 2017

                                HARVIS & FETT LLP

                                _____
                                Gabriel P. Harvis
                                305 Broadway, 14th Floor
                                New York, New York 10007
                                (212) 323-6880
                                gharvis@civilrights.nyc

                                *Attorneys for plaintiff*