EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

GONZALO CORTES,

                                 Plaintiff,        14-CV-3014-LDH-RML

      -against-                          DEFENDANTS' RESPONSE TO
                                                   PLAINTIFF's LOCAL CIVIL RULE
THE CITY OF NEW YORK, ET AL.,          56.1 STATEMENT OF UNDISPUTED
                                                              FACTS
                                 Defendants.

------------------------------------------------------------------ x

       Defendants, The City of New York, Matthew Smith, Christopher Musa, Shaun Ryan, Andrew Schulz, Stephen Daly, Mario Cappuccia and Peter Rodeschin respectfully submit this statement pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Eastern District of New York, and pursuant to Your Honor's Individual Rules, hereby respond to plaintiff's statement of material facts to which they contend there is no genuine issue to be tried:

18. In the early morning hours of July 1, 2013, Mr. Cortes was involved in a verbal dispute with a bartender at Friends Tavern, a gay bar on Roosevelt Avenue in Queens. Cortes Dep., Harvis Decl., Ex. 2, p. 37, ln. 24-25; p. 69, ln. 1-25.

    **Objection**, because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

19. The dispute arose after Mr. Cortes purchased a half-bottle of Aguardiente, a Columbian liquor, and, upon returning from the bathroom, saw evidence that the bartender had poured his drink for other patrons. Cortes Dep., Harvis Decl., Ex. 2, p. 54, ln. 20-p. 56, ln. 12.

>**Objection**, because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

20. At no time did Mr. Cortes touch the bartender or engage in any violent behavior at the bar. Cortes Dep., Harvis Decl., Ex. 2, p. 74, ln. 8-13.

>**Disputed**. According to the arrest report, plaintiff became angry and struck the complainant in the mouth with an open hand, and that he started throwing ice and bottles behind the bar. See Arrest Report, attached as Exhibit 13 to the Declaration of Gabriel P. Harvis, dated January 13, 2017. Defendants also object to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

21. Mr. Cortes called 911 to report the incident, as did the bartender, but the responding NYPD officers failed to conduct a reasonable investigation and arrested Mr. Cortes on the false allegations of the bartender, although the bartender refused medical attention. Cortes Dep., Harvis Decl., Ex. 2 at p. 73, ln. 23-p. 77, ln. 11 Smith Dep., Harvis Decl., Ex. 11 at p. 69, ln. 12-p. 70, ln. 3.

>**Disputed in part.** It is undisputed that both plaintiff and the bartender called 911, that plaintiff was arrested and that the bartender refused medical attention. The contention that the officers failed to conduct a reasonable investigation is not a statement of fact, nor is it supported by the cited testimony. In addition, this statement sets forth new facts that

are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b), as plaintiff withdrew his false arrest and malicious prosecution claims in this case. Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

22. Mr. Cortes arrived at the precinct by 3:45 a.m., sober and uninjured. *See* Command Log, Harvis Decl., Ex. 12 (physical condition: normal); Arrest Report, Harvis Decl., Ex. 13 (same); Smith Dep., Harvis Decl., Ex. 11, p. 82, ln. 10-14 (arresting officer) (Q:…Would [someone being visibly intoxicated] be documented anywhere? A: In the arrest report I believe.); Medical Treatment of Prisoner of Prisoner Form I, Harvis Decl., Ex. 14 ("Prisoner Refused Medical Treatment in the Field: No"); Medical Treatment of Prisoner of Prisoner Form II, Harvis Decl., Ex. 15 (same).

> **Disputed.** It is undisputed that both plaintiff and the bartender called 911, that plaintiff was arrested and that the bartender refused medical attention. However, defendants dispute that plaintiff was sober, as the arrest report, cited here by plaintiffs, states that plaintiff was intoxicated, as did Sgt. Rodeschin (Harvis Dec., Ex. 4, p. 177 ln. 177:3-9). Furthermore, the contention that the officers failed to conduct a reasonable investigation is not a statement of fact, nor is it supported by the cited testimony. In addition, this statement sets forth new facts that are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b), as plaintiff withdrew his false arrest and malicious prosecution claims in this case. Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

23. Mr. Cortes's personal property was confiscated and he was put into a cell, already crowded with eight or nine other men, that had no toilet. Cortes Dep., Harvis Decl., Ex. 2, p. 84, ln. 5-8; p. 86, ln. 23-25; p. 87, ln. 1-6.

> **Objection** because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

24. At approximately 4:45 a.m., after being in a crowded cell with nine strangers for approximately an hour without a bathroom, Mr. Cortes asked to use the restroom. Cortes Dep., Harvis Decl., Ex. 2, p. 110, ln. 10-13; p. 114, ln. 4-7.

> **Undisputed.**

25. Defendant Musa handcuffed Mr. Cortes and led him to a darkened hallway of vacant cells in direct view of supervising Desk Sergeant Stephen Daly. Daly Dep., Harvis Decl., Ex. 1, p. 83, ln. 7-22; Cortes Dep., Harvis Decl., Ex. 2, p. 112, ln.5-14; p. 114, ln. 13-p. 115, ln. 16; p. 117, ln. 18-24; p. 119, ln. 17-23; Letter from G. Harvis to E. Jacobs dated September 29, 2016, Harvis Decl., Ex. 16 ("9/29/16 Ltr.") at p. 3 ("The defendant who brought Mr. Cortes to the bathroom was Christopher Musa.").

> **Disputed** object to the extent that the cited testimony does not support the contention that Sgt. Daly actually viewed anyone leading plaintiff to the hallway, but instead only that a desk sergeant seated at the desk would have a line of sight to that doorway. Defendants also object to this because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion as defendants are not moving

regarding the alleged force used by defendant Musa, in violation of Local Civil Rule 56.1(b). Defendants also Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

26. Mr. Cortes grew scared and turned around -- in addition to defendant Musa, defendants Cappuccia, Smith, Schulz and Ryan were directly behind him. Defendant Musa had his hands on Mr. Cortes. Cortes Dep., Harvis Decl., Ex. 2, p. 114, ln. 17-19; p. 118, ln. 12-13; p. 119, ln. 11-p. 120, ln. 3; p. 115, ln. 6-11 ("When I refused to go inside the bathroom, I looked back and there were five officers."); 9/29/16 Ltr., Harvis Decl., Ex. 16 (identifying Musa, Cappuccia, Ryan, Smith and Schulz as the the other four assailants).

> **Disputed.** Plaintiff testified only that four other officers (later identify via letter by plaintiff's counsel) were behind him, not that they were "directly" behind him. In addition, this statement sets forth new facts that are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b), as defendants are not moving on behalf of Officer Musa regarding the claim of excessive force against him. Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

27. Mr. Cortes was scared and told the officers that he no longer needed to use the restroom. Cortes Dep. Harvis Decl., Ex. 2, p. 114, ln. 20-p. 115, ln. 5.

> **Disputed**. The testimony only states that plaintiff told one officer, later identified by plaintiff's counsel as Officer Musa, that he no longer needed to use the restroom. In addition, this statement sets forth new facts that are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b), as defendants are not moving on behalf of Officer Musa regarding the claim of excessive force against him.

> Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

28. At that point the officers violently yanked Mr. Cortes upward and into cell bars by his rear-cuffed arms, tearing his right rotator cuff completely. Cortes Dep., Harvis Decl., Ex. 2, p. 114, ln. 23-p. 115, ln. 11 ("…That's the moment *they* grabbed me and *they* pushed me against the cell and that's when *they* hurt my shoulder…"); p. 120, ln. 4-6 (Q: How far were the other four officers? A: They were all together.); Expert Report of Drew A. Stein, M.D., Harvis Decl., Ex. 9 (finding a causal connection between the incident and plaintiff's injury).

> **Disputed**. Plaintiff testified that it was the officer who escorted him to the bathroom, identified by counsel as Officer Musa, who grabbed his handcuffs and pushed him into the cell, using the singular, not the plural as quoted here. (Pl. Dep. 116:20-117:11). In addition, plaintiff misrepresents the testimony regarding the other officers. Plaintiff testified that the four other officers were "all together", not that all five officer, Officer Musa and the four who were some distance behind, were "all together." Pl. Dep. 120:1-11.

29. After the assault, and with Mr. Cortes still pressed against the cell bars, defendant Musa whispered in plaintiff's ear "oh, I thought you wanted to go to the bathroom." Cortes Dep., Harvis Decl., Ex. 2, p. 115, ln. 1-5; p. 115, ln. 23-p. 116, ln.3; p. 116, ln. 12-16; p. 118, ln. 20-25; p. 122, ln. 13-22.

> **Objection.** Defendants object to this because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion as defendants are not moving regarding the alleged force used by defendant Musa, in violation of Local

>Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

30. The assault took place in the direct line-of-sight of desk sergeant Stephen Daly, who was on duty at the time and only an hour earlier had recorded Mr. Cortes as uninjured in the precinct's command log. Daly Dep., Harvis Decl., Ex. 1, p. 134, ln. 18-p. 135, ln. 3, p. 135, ln. 18-p. 136, ln. 2; p. 136, ln. 16-p. 137, ln. 10; Daly Dep., Harvis Decl., Ex. 1, p. 83, ln. 7-22.

>**Disputed** object to the extent that the cited testimony does not support the contention that Sgt. Daly actually plaintiff or was seated at the desk when these alleged acts occurred, but only that the desk officer seated at the desk would have a line of sight to that doorway. In addition, the cited testimony shows that Sgt. Daly recorded Mr. Cortes as "apparently normal" in the command log, not as "uninjured."

31. Mr. Cortes was in visible agony and still handcuffed when defendant Musa returned him to the crowded cell. Cortes Dep., Harvis Decl., Ex. 2, p. 124, ln. 24- p. 125, ln. 3; p. 125, ln. 14-15; p. 127, ln. 10-15; 9/29/16 Ltr., Harvis Decl., Ex. 16 at p. 3.

>**Objection.** Defendants object to this because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion as defendants are not moving regarding the alleged force used by defendant Musa, in violation of Local Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

32. Instead of rendering Mr. Cortes aid for the severe injury they had caused, Musa and the other officers kept Mr. Cortes confined to the cell in handcuffs for approximately three hours (from 4:45 a.m. to 7:37 a.m.), enduring excruciating pain as the handcuffs cut the skin of his wrists. Memo Book of Arresting Officer Matthew Smith, Harvis Decl., Ex. 17 at Def208 (reflecting

plaintiff's arrival at precinct at 3:45 a.m.); Command Log, Harvis Decl., Ex. 12 (same); Cortes Dep., Harvis Decl., Ex. 2, p. 114, ln. 4-12; p. 126, ln. 23-p. 127, ln. 6; FDNY Pre- Hospital Care Report, Harvis Decl., Ex. 5 ("Onset Date/Time [of injury]:04:00:00;" "Patient Contact [with EMS]: 7:37:02").

> **Disputed**. Plaintiff has cited to no evidence that these specific officers took any active role in confining plaintiff in a cell.

33. Mr. Cortes repeatedly asked for medical treatment beginning immediately after the assault, but the defendants refused to even acknowledge him. When an officer did finally speak to Mr. Cortes, it was to convey the threat that plaintiff would be "the last person to leave" the precinct if he insisted on receiving medical treatment. *Id*. Plaintiff responded "I told him I didn't care, that I was in pain." Cortes Dep., Harvis Decl., Ex. 2, p. 125, ln. 25-p. 126, ln. 5 ("…I told him I didn't want them to hit me again."); 127, ln. 10-p. 128, ln. 17.

> **Disputed**. Plaintiff has put forth no evidence that the officers who spoke with him were the defendants. The officer who allegedly threatened plaintiff was an Officer Smith, but plaintiff was unable to recall if it was defendant Matthew Smith who was present at plaintiff's arrest. Cortes Dep., Jacobs Decl., Ex. C. p. 126:12-16. Plaintiff's cited testimony only identifies one other officer, not the seven defendants plaintiff is suing, who were even present in the room when plaintiff alleges he was asking for medical attention, and he has not been able to identify who that officer was.

34. When medical technicians finally reached plaintiff inside the precinct at approximately 7:37 a.m., they requested that plaintiff's handcuffs be removed, noted the onset time of the injury as 4:00 a.m. and also noted a suspected dislocation and deformity of Mr. Cortes's right shoulder. FDNY Prehospital CareReport Summary, Harvis Decl., Ex. 5 at Def

198-99; Cortes Dep., Harvis Decl., Ex. 2, p. 128, ln. 23-p. 129, ln. 5; Rodeschin Dep., Harvis Decl., Ex. 4, p. 286, ln. 7-9; Sprint Report, Harvis Decl., Ex. 6 at Def 196 .

> **Disputed.** The records do not support plaintiff's contention that the medical technicians made their notations while inside the precinct. It is undisputed that the records reflect that EMS arrived at the precinct at 7:37 a.m., and that the records otherwise reflect the statements reported.

35. Despite NYPD regulations requiring in-custody injuries to be documented and promptly reported up the chain of command and to the internal affairs bureau, Mr. Cortes's injury was never documented or reported. Daly Dep., Harvis Decl., Ex. 1, p. 180, ln 18-25; p. 189, ln. 7-23; Guzman Dep., Harvis Decl., Ex. 3, p. 92, ln. 7-16; p. 93, ln. 24-p. 94, ln. 9; NYPD Patrol Guide § 207-21, Harvis Decl., Ex. 18; NYPD Patrol Guide § 208-03, Harvis Decl., Ex. 19 at ¶ 23(g)(1) (requiring preparation of medical treatment of prisoner form in all cases).

> **Disputed**. Plaintiff's injury was documented in two medical treatment of prisoner forms and in the Command Log. See Ex. 12, 14 and 15 to Harvis Decl. Defendants admit that the injury was never reported to IAB. However, defendants object to this because However, defendants contend that plaintiff was not injured in NYPD custody, therefore, there was no need to report this injury to IAB. In addition, defendants object, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion as defendants are not moving regarding the alleged force used by defendant Musa, in violation of Local Civil Rule 56.1(b). Accordingly, those statements should be stricken from the record and/or disregarded by the Court.

36. At 6:00 a.m., officers prepared two different medical treatment of prisoner forms, one indicating a "pre-existing" injury and one indicating a "new" injury. Medical Treatment of

Prisoner of Prisoner Form I, Harvis Decl., Ex. 14; Medical Treatment of Prisoner of Prisoner Form II, Harvis Decl., Ex. 15.

> **Disputed**. While both documents do have the time of 6:00 indicated on them, there is nothing in the record to indicate that they were completed at that time.

37. Both forms reflect defendant desk sergeant Stephen Daly having signed them at 6:00 a.m., although an ambulance was not even requested for Mr. Cortes until at least 7:26 a.m. and Daly would later deny the authenticity of his signature on the forms. Daly Dep., Harvis Decl., Ex. 1, p. 157, ln. 24-p. 158, ln. 14; p. 173, ln. 18- p. 175, ln. 7; p. 186, ln. 25-p. 187, ln. 4.

> **Disputed**. The cited testimony does not reflect that the forms were created at 6:00 a.m. In addition, the evidence does not indicate that Sgt. Daly actually signed these forms, nor that he denied the authenticity of his signature on the forms. Sgt. Daly in fact stated that he did not sign the forms in question.[1] It is undisputed that an ambulance was called at 7:26 a.m.

38. At 6:30 a.m., defendant Peter Rodeschin arrived at the precinct to begin his shift as desk sergeant. Rodeschin Dep., Harvis Decl., Ex. 4, p. 243, ln. 21-24.

> **Disputed**. The cited testimony only supports the fact that Sgt. Rodeschin signed in for work at that time, not that he began his shift as a desk sergeant at 6:30 a.m.

39. Sergeant Rodeschin admits that he altered the prior command log entry concerning Mr. Cortes's physical condition as originally written by Sergeant Daly. Rodeschin Dep., Harvis Decl., Ex. 4, p. 177, ln. 10-18; p. 179, ln 14-22; Command Log, Harvis Decl., Ex. 12 (reflecting alteration).

> **Undisputed**.

---

[1] Defendants note that plaintiff did not provide pages 173 through 174 of Sgt. Daly's transcript, cited herein. Defendants have provided the Court with the missing pages under separate cover.

40. EMS workers recorded Mr. Cortes as saying inside the precinct "PD took him down when he went to the bathroom." FDNY Pre-Hospital Care Report, Harvis Decl., Ex. 5 at Def199.

> **Disputed.** The records do not support plaintiff's contention that these statements were made while inside the precinct. Defendants do not dispute that the records otherwise record that plaintiff made this statement.

41. As Mr. Cortes was led from the precinct at 8:05 a.m. with his right arm in a sling, defendant Peter Rodeschin pulled on and tightened the handcuff on plaintiff's left wrist, which was attached to his belt loop, making the transport more painful. Rodeschin Dep., Harvis Decl., Ex. 4, p. 201, ln. 12-p. 202, ln. 11; Cortes Dep., Harvis Decl., Ex. 2, p. 133, ln. 24-p. 134, ln. 14.

42. Mr. Cortes arrived at Elmhurst Hospital at 8:19 a.m. complaining of shoulder and neck pain as a result of being "assaulted and pushed against some bars." Elmhurst Hospital Medical Records, Harvis Decl., Ex. 7, at P21.

> **Disputed**. The records relied on by plaintiff show only that Peter Rodeschin may have instructed someone to attach the handcuff to plaintiff's belt loop, and that it made it "more difficult" for plaintiff, not more painful. It is undisputed that plaintiff's medical records report his statements.

44. Mr. Cortes told hospital workers that he had been "assaulted" and "pushed against bars." Elmhurst Hospital Medical Center Record, Harvis Decl., Ex. 7.

> **Undisputed.**

45. At his arraignment later that day, plaintiff's public defender made a record of his injuries, noting that he had been injured inside the precinct when "five officers pushed him up against the wall and he sustained injuries to his shoulder." Mr. Cortes was released on his own recognizance

and the charges were later dismissed. Transcript of Criminal Court proceedings, Harvis Decl., Ex. 8 at P165-66; Certificate of Disposition, Harvis Decl., Ex. 20.

    **Undisputed.**

46. Mr. Cortes sustained permanent and debilitating injury inside the precinct that morning. *See* Expert Report of Drew A. Stein, M.D., Harvis Decl., Ex. 9 ("The patient's complaints and surgery are, within a reasonable degree of medical certainty, related to the described accident on 7/1/13…The patient has a marked orthopedic disability."). Dr. Stein's report was prepared before Mr. Cortes underwent a second surgical intervention in August 2016. *See* Harlem Health Center Surgical Pre-Admission Form, Harvis Decl., Ex. 10, generally.

    **Objection**.  Defendants object because, to the extent that this statement sets forth new facts, they are not material to Defendant's summary judgment motion, in violation of Local Civil Rule 56.1(b).  Accordingly, those statements should be stricken from the record and/or disregarded by the Court.


Dated:    New York, New York
           March 28, 2018

                                    ZACHARY W. CARTER
                                    Corporation Counsel of the City of New York
                                    *Attorney for Defendants ,*
                                    100 Church Street, 3rd Floor
                                    New York, New York 10007
                                    (212) 356-3540

                              By:    /s/
                                      Elissa B. Jacobs
                                      *Senior Corporation Counsel*


cc:    <u>VIA E-MAIL</u>
       Gabriel P. Harvis
       *Attorney for Plaintiff*