

**ZACHARY W. CARTER**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**ERIN T. RYAN**
*Assistant Corporation Counsel*
Tel.: (212) 356-5056
Fax: (212) 356-3509
eryan@law.nyc.gov

January 24, 2019

**BY ECF**
Honorable LaShann DeArcy Hall
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>Gonzalo Cortes, et al. v. Police Officer Musa</u>, 14-CV-3014 (LDH)(RML)

Your Honor:

      I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, and one of the attorneys representing defendant Sergeant Christopher Musa in the above referenced action. In that capacity, I write to provide supplemental briefing on numerous issues that were raised at the January 23, 2019 Final Pretrial Conference.

      Regarding defendant's motion *in limine* seeking the preclusion of Dr. Stein's expert report and testimony, the parties understand the Court's order of earlier today as meaning that the admissibility of the existing Stein report is now moot, as the parties will be engaging in further expert discovery. The issue of admissibility of expert reports can be dealt with in the next round of *in limine* motions, as set by the Court.

**Proposed Language for the Adverse Inference**

      Regarding the Court's request that the parties provide proposed language for a stipulation as to what the jury can permissibly infer from the absence of the prisoner pedigree card in this matter, defendant proposes the following language:

      "The prisoner pedigree form would have reflected that no injuries to Mr. Cortes were observed by the arresting officer."

      Defendant notes that any language affirmatively stating that plaintiff was uninjured would not have been present on the prisoner pedigree form, as it is not something that an officer could have determined conclusively from merely observing plaintiff at the precinct. Additionally, any affirmative statement by the plaintiff that he was uninjured would not be recorded on the prisoner pedigree form as it only indicates the officer's own impression of the prisoner's condition. To the

extent that plaintiff seeks language affirmatively stating that plaintiff was "apparently uninjured," defendants would be amendable with a stipulation using that language as well.

With regard to the Central Booking Medical Screening Form, defendant proposes the following language:

"The Central Booking Medical Screening Form would have reflected that Mr. Cortes stated that he was injured."

**Admissibility of the Sprint Report**

The parties discussed the admissibility of the Sprint Report, included as defendant's "Exhibit D" in the current Joint Pretrial Order ("JPTO") filed January 23, 2019. A copy of this record is attached to this letter for the Court's reference.

This print out shows three separate 911 calls, that were made around the same time, and were determined to be connected to the incident involving plaintiff at Friends Tavern. Plaintiff has admitted that he called 911, and indeed one of the callers (on the call received at 3:20:09) is noted as speaking Spanish. Plaintiff's counsel has confirmed that this call came from plaintiff's phone number. See Pg. 2, Sprint Report. At 3:21:43, another call was received by an individual named "Peter" – which the record shows is the name of the bartender. Id. This caller states that a male Hispanic was irate, throwing items around the location, and hit the bartender in the face. Id.

As noted by Your Honor at the January 23, 2019 conference, 911 calls and the records documented those calls are generally considered reliable and admissible. The document itself, and the notes by the 911 operators contained within, are admissible as a business record, under FRE 803(6). See Colter v. Reyes, No. 15-cv-3214 (ENV) (SMG), 2017 U.S. Dist. LEXIS 103617, at *6 (E.D.N.Y. July 4, 2017) (Holding that Sprint Reports are admissible under FRE 803(6), even considering that "[t]hose reports purportedly contain information gleaned by the 911 operator who received the emergency calls related to the incident….").

The statements contained within the document that are attributed to plaintiff are party opponent admission under FRE 801(d)(2)(A) and therefore are not considered hearsay under the Federal Rules. The statement attributed to the other callers are considered hearsay, but are admissible as exceptions to hearsay as they are both present sense impressions under FRE 803(1) and excited utterances under FRE 803(2). In particular, defendant seeks to introduce the content of the third call noted at 3:21:43 under these exceptions. The content of that call makes it clear that it was made by the bartender – the purported victim of the incident – while was he still under the stress of the incident, and he clearly had personal knowledge of the facts he was conveying to the 911 operator.

Indeed, numerous Courts in this District have held that these hearsay exceptions apply to 911 calls and the reports generated by the 911 operators. See, e.g., United States v. Kuo, No. 10-CR-671(S-1) (KAM), 2011 U.S. Dist. LEXIS 4387, at *32-33 (E.D.N.Y. Jan. 18, 2011) ("The court is inclined to agree in this case that the 911 recordings and 'sprint report' would qualify as business records and would thus be admissible despite their hearsay status."); United States v.

Steele, 216 F. Supp. 3d 317 (S.D.N.Y. 2016) ("The 911 call the Government seeks to introduce would be admissible as a present sense impression or as an exited utterance…. Even if the 911 call were not admissible as a present sense impression, it would be admissible as an excited utterance."); United States v. Harper, No. 05-CR-6068L, 2009 U.S. Dist. LEXIS 3593 (W.D.N.Y. Jan. 20, 2009) ("There does not seem to be any dispute here that the [911 call report] itself meets the requirements for admission as a business record . . . [and the] statements to the 911 operator, which are reflected in that printout … fall within the exceptions for excited utterances and present sense impressions."); United States v. Lewis, 859 F. Supp. 2d 387 (E.D.N.Y. 2012) (holding 911 calls made by witnesses to a robbery to be admissible as both present sense impressions and excited utterances.); John v. Masterson, No. 08-0141 (TLM), 2010 U.S. Dist. LEXIS 47669 (D. Conn. May 14, 2010) ("The record of [911 telephone call statements] is admissible . . . as a 'business record'. . . ."); United States v. Padilla, S1 94 Cr. 313 (CSH), 1995 U.S. Dist. LEXIS 5838 (S.D.N.Y. May 1, 1995) ("[T]he [911] incident records qualify qua documents for admission under [the business records exception], as records of regularly conducted activity.").[1]

Accordingly, as the Sprint Report and the operator's statements therein fall within the hearsay exception of 803(6), and the statements of the 911 callers fall within the hearsay exceptions of 803(1) and 803(2), defendant contends that the Sprint Report should be deemed admissible.

**Plaintiff's Treating Physicians Should not be Permitted to Discuss Causation**

In the current JPTO, plaintiff lists two treating physicians, Dr. Capiola and Dr. Quach. Defendant objects to these witnesses to the extent their testimony exceeds established boundaries for "treating physicians." Specifically, defendant objects to these witnesses testifying as to the causation of plaintiff's alleged injuries.

First, plaintiff never disclosed these witnesses pursuant to either Rule 26(a)(2)(B) or Rule 26(a)(2)(C). That failure imposes limitations on what opinions can be elicited. If a witness is going to testify to causation, the Federal Rules requires that the witness be designated as an expert. "After the adoption of Rule 26(a)(2)(C) in 2010, a treating physician may offer factual testimony as well as opinion testimony regarding his patient's diagnosis, treatment, prognosis, or causation as long as the proper disclosure under Rule 26(a)(2)(C) is served on the defendant." Webb v. Zimmer, Inc., No. 2:14-cv-01106 (ADS)(GRB), 2018 U.S. Dist. LEXIS 22701, at *12-13 (E.D.N.Y. Feb. 12, 2018) (citations omitted). Rule 26(a)(2)(C) requires a statement regarding "(i) the subject matter on which the witness is expected to present evidence under [FRE] 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). This is in contrast to the more extensive expert report and

---

[1] To the extent plaintiff contends that the 911 records may be admissible but not the Sprint Report, Court have also found that this argument is meritless, especially in situations such as this case where the audio recording was routinely destroyed before this lawsuit was ever filed. See, e.g., United States v. Pizarro, No. 17-CR-151 (AJN), 2018 U.S. Dist. LEXIS 75735 (S.D.N.Y. May 4, 2018) (rejecting the argument that a Sprint Report cannot be admitted without a recording of the 911 call itself) (collecting cases).

disclosures required under Rule 26(a)(2)(B). Without the required disclosure under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C), a treating physician may only testify as a fact witness regarding patient treatment. Webb, 2018 U.S. Dist. LEXIS 22701, at *12-13.

"Courts in this district have found that 'when [a] treating physician seeks to render an opinion on causation, that opinion is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for the purposes of litigation.'" N.K. v. Abbott Labs., No. 14-CV-4875 (RER), 2017 U.S. Dist. LEXIS 77461, at *23-24 (E.D.N.Y. May 22, 2017), (citing Davids v. Novartis Pharm. Corp., 857 F. Supp. 2d 267, 280 (E.D.N.Y. 2012)); see also Deutsch v. Novartis Pharms. Corp., 768 F.Supp.2d 420, 472 (E.D.N.Y. 2011) (finding a treating physician's causation opinion to be limited by the reliability requirements of Rule 702).

In Ali v. Connick, No. 11-CV-5297 (NGG) (VMS), 2016 U.S. Dist. LEXIS 67466 (E.D.N.Y. May 23, 2016), the Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York, summarized the limitations that must be applied where a party fails to comply with Rule 26.

> "The court thus concludes that treating physician testimony can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation; (2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was 'retained or specially employed to provide expert testimony.' Fed. R. Civ. P. 26(a)(2)(B). The first category is outside the purview of Rule 26 and is considered factual testimony. The second falls under the domain of Rule 26(a)(2)(C). The third is governed by Rule 26(a)(2)(B)."

Ali, 2016 U.S. Dist. LEXIS 67466 at *24-25. Here, because plaintiff failed to disclose Dr. Capiola and Dr. Quach as experts under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C), their testimony must be limited only to facts acquired and formed during consultation. Id. ("Here, the parties agree that the five treating physicians are not experts, so these potential witnesses must only provide testimony falling within the first category."). This approach was also subsequently adopted by the Honorable Brian M. Cogan, United States District Judge for the Eastern District of New York in Pierce v. City of N.Y., 16 Civ. 5703 (BMC), 2017 U.S. Dist. LEXIS 93087 (E.D.N.Y. June 16, 2017). Id. at * 5-11.

In addition, none of the records reflect that either doctor inquired into *how* plaintiff sustained his alleged injury during their treatment of plaintiff. In fact, Dr. Capiola's records only generically mention "an incident" on July 1, 2013 without further detail of any kind. See Pl. Ex. 13, P365-380.[2] Therefore, their after the fact opinion regarding causation is irrelevant and inadmissible, as the causation was clearly not relevant to their treatment of plaintiff.

---

[2] For confidentiality reasons, the actual records are not annexed hereto.

Thank you for your consideration in this regard.

                    Respectfully submitted,

                    /s/
                    Erin Teresa Ryan
                    Assistant Corporation Counsel
                    Special Federal Litigation

cc:    Gabriel Harvis, Esq. (BY ECF)
       Raymond Panek, Esq.
       *Attorneys for Plaintiff*